IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDWARD MONROE, FABIAN MOORE, and TIMOTHY WILLIAMS, on behalf of themselves and all other similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>FTS USA, LLC; UNITEK USA LLC; UNITEK ACQUISITION, INC.; UNITEKFIBER HOLDINGS, LLC; UNITEK FIBER, LLC; GW COMMUNICATON SOLUTIONS LLC; GRAYCLIFF ENTERPRISE SOLUTIONS, LLC; HUTCHINS TELECOME SOLUTIONS, LLC; SDT SOLUTIONS, LLC; UNITEK SERVICES COMPANY, LLC; and UNITEK PAYROLL SERVICES, LLC,<br><br>Defendants. | C.A. No. 25-362-JLH-LDH<br><br>FILED<br><br>MAR - 5 2026<br><br>U.S. DISTRICT COURT DISTRICT OF DELAWARE |

## REPORT AND RECOMMENDATION

Pending before the Court is Defendants FTS USA, LLC ("FTS"), UniTek USA, LLC ("USA" and together with FTS, the "Judgment Defendants"), UniTek Acquisition, Inc. ("Acquisition"), UniTek Fiber Holdings, LLC ("Fiber Holdings"), UniTek Fiber, LLC ("Fiber"), GW Communications Solutions, LLC ("GW"), Graycliff Enterprise Solutions, LCC, ("Graycliff"), Hutchins Telecom Solutions, LLC ("Hutchins"), SDT Solutions, LLC ("SDT"), UniTek Services Company, LLC ("UniTek Services"), UniTek Payroll Services, LLC ("Payroll Services"), and Wirecomm Systems (2008), Inc.'s ("Wirecomm," and collectively, "Defendants") motion to dismiss Plaintiffs Edward Monroe, Fabian Moore, and Timothy Williams's (collectively, the "Plaintiffs") complaint for failure to state a claim (the "Motion"). The Motion is fully briefed.

(D.I. Nos. 21, 25, 26). Also pending before the Court is Defendants' motion to stay discovery or the entry of a case management order ("Motion to Stay") pending resolution of the Motion. (D.I. 28). The Motion to Stay is fully briefed. (D.I. Nos. 28, 29, 30). The motions were referred to me on September 18, 2025. (D.I. 32). For the following reasons, I recommend granting-in-part and denying-in-part Defendants' Motion. I also recommend denying as moot Defendants' Motion to Stay.

I.     BACKGROUND

The background of this case is long, complex, and not materially disputed by the parties. Because I write for the parties, I do not recite the extensive factual and procedural history of this case. Instead, I will focus on the facts relevant to the Motion before me.

In February of 2008, Plaintiffs filed a class action under the Fair Labor Standards Act against the Judgment Defendants in the United States District Court for the Western District of Tennessee. (D.I. 1 ¶ 38). Thereafter, a jury returned a verdict in favor of Plaintiffs and nearly 300 other cable installers and the district court entered a judgment for $894,868.68, inclusive of post-judgment interest. (*Id.* ¶¶ 39–40). Plaintiffs moved for fees and costs, which the court awarded in the amount of $2,002,965.05. (*Id.* ¶¶ 41–42). Appeals to the Sixth Circuit followed. (*Id.* ¶¶ 43–45). Upon the conclusion of the appeals process, the district court entered an amended judgment in favor of the Plaintiffs for $2,906,958.85. (*Id.* ¶ 46). Plaintiffs filed a supplemental petition for fees and costs, which the court granted. (*Id.* ¶ 47). The second amended judgment was then entered in favor of Plaintiffs in the amount of $3,181,681.44. (*Id.*).

As the parties were briefing the appeal in the Sixth Circuit, USA executed a corporate reorganization through the omnibus reorganization agreement ("ORA"). (*Id.* ¶ 48). Prior to the ORA, USA owned 100% of the equity interests in GW, Graycliff, Hutchins, SDT, UniTek Services,

Payroll Services, and Wirecomm (together, the "Fiber Entities"). (*Id.* ¶¶ 49–50). Pursuant to the ORA, USA transferred its equity interests in the Fiber Entities to USA's parent company, Acquisition, without consideration. (*Id.* ¶¶ 52–53). Then, Acquisition transferred all of its equity interests in the Fiber Entities to its wholly-owned subsidiary, Fiber Holdings, without consideration. (*Id.* ¶¶ 54–57). Last, Fiber Holdings transferred all of its equity interests in the Fiber Entities to its wholly-owned subsidiary, Fiber, again without consideration. (*Id.* ¶¶ 56–57). As a result, all of the Fiber Entities are now owned by Fiber. (*Id.* ¶ 58).

Plaintiffs aver that, prior to the transfers, USA possessed a majority of the assets in the UniTek family of companies, and had assets of more than $100 million, which included the assets of the Fiber Entities. (*Id.* ¶ 59). After the transfers, however, Plaintiffs aver that neither FTS nor USA possessed sufficient assets to satisfy the judgment, that they do not have bank accounts or employees, do not own property or other assets, and that any assets they had were transferred to other UniTek companies. (*Id.* ¶¶ 60–64). Meanwhile, as of 2022, the Fiber Entities collectively maintained more than $130 million in assets. (*Id.* ¶ 66). Plaintiffs contend that Fiber is a mere continuation of and a successor to USA. (*Id.* ¶¶ 91–94).

Plaintiffs initiated this action on March 24, 2025, asserting claims for constructive fraudulent transfer (Count I), actual fraudulent transfer (Count II), and successor liability (Count III). Defendants' Motion seeks to dismiss all counts of Plaintiffs' Complaint.

## II. LEGAL STANDARD

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true (and) construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotations omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the

complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation(s) of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

### III. DISCUSSION

Defendants argue that Plaintiffs' Complaint contains improper group pleading in violation of Rule 8(a), that Plaintiffs have not stated claims for constructive or actual fraudulent transfer or successor liability, and that the Delaware Uniform Fraudulent Transfer Act ("DUFTA") forecloses punitive damages awards and attorneys' fees. Except for agreeing that DUFTA does not contemplate punitive damages, I reject Defendants' remaining grounds for dismissal.

#### A. Whether Plaintiffs' Complaint Represents Improper Group Pleading

Defendants argue that Plaintiffs' Complaint represents improper group pleading under Rule 8(a) because Plaintiffs do not distinguish between defendants and instead rely on collective labels. (D.I. 21 at 2, 10–11).

"[A] complaint that collectively refers to defendants meets Rule 8's pleading standard if 'it can be reasonably inferred that each and every allegation is made against each individual defendant.'" *Pixis Drones, LLC v. Lumenier LLC*, No. 23-141-RGA, 2023 WL 6660991, at *2 (D. Del. Oct. 12, 2023) (quoting *Groove Digital, Inc. v. King.com, Ltd.*, No. 18-00836-RGA, 2018 WL 6168615, at *1 (D. Del. Nov. 26, 2018)); *Id.* at *3 ("While explicitness may be prudent, what is necessary to establish fair notice depends on the context . . . [E]very case is unique, and it is therefore hard to use previously-decided cases as persuasive authority.").

The Complaint alleges that: (1) prior to March 29, 2021, USA wholly owned the equity interests in seven identified Fiber Entities (D.I. 1. ¶¶ 48–51); (2) those Fiber Entities collectively held more than $90 million in assets (*Id.* ¶ 51); (3) on March 29, 2021, USA entered the ORA and transferred its interests in the Fiber Entities to USA's parent, Acquisition (*Id.* ¶¶ 48–52, 70); (4) Acquisition then transferred those same interests to its wholly-owned subsidiary, Fiber Holdings (*Id.* ¶¶ 54, 70); and (5) Fiber Holdings then transferred those same interests to its wholly-owned subsidiary, Fiber (*Id.* ¶¶ 56–58, 70). The Complaint further alleges that USA, Acquisition, and Fiber Holdings received no consideration for those transfers, and that after the restructuring, FTS and USA lacked assets or operations sufficient to pay the Tennessee judgment (*Id.* ¶¶ 53, 55, 57, 59–63, 69–76).

Those allegations identify specific transferors, transferees, assets, and timing. The fact that Plaintiffs refer to the "Fiber Entities" collectively does not, in this context, deprive Defendants of fair notice because the Complaint pleads that each of those entities was transferred in the same transaction and in the same manner pursuant to the ORA. Nor have Defendants adduced any authority forbidding Plaintiffs at the pleading stage from referring to certain defendants as a group when they are alleged to have acted together under the ORA attached to the Complaint.

Although Defendants argue that Plaintiffs did not allege that the Judgment Defendants had "sufficient assets at the time the Judgment was entered to satisfy the Judgment" (D.I. 21 at 11), Plaintiffs plead that, prior to the transfers, USA's assets primarily consisted of its interests in the Fiber Entities, the Fiber Entities maintained more than $90 million in assets, and the judgment against USA and FTS was for over $3.1 million. (D.I. 1 ¶¶ 47, 50–51, 59.) These allegations are sufficient to demonstrate that USA transferred sufficient assets to cover the Tennessee judgment.

Accordingly, the Complaint satisfies Rule 8(a)'s notice-pleading standard, and I recommend denying the Motion on this ground.

### B. Whether Plaintiffs State a Claim for Constructive Fraudulent Transfer

Defendants argue that Plaintiffs have not stated a claim for constructive fraudulent transfer because they have not alleged "what assets the Judgment Defendants, specifically, transferred to avoid paying the Judgment." (D.I. 26 at 5).

To state a constructive fraudulent transfer claim under DUFTA, Plaintiffs must allege "(i) that the transferor failed to receive reasonably equivalent value for the asset transferred; and (ii) that the transferor was insolvent at the time of the transfer, or was rendered insolvent by the transfer." *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *9 (Del. Ch. Sept. 5, 2023). Although Defendants argue that "many courts apply [a heightened pleading standard under Rule 9(b)] . . . to constructive fraudulent transfer claims" (D.I. 21 at 12), the Court of Chancery of the State of Delaware has explained that constructive fraudulent transfer claims are subject to the more lenient notice pleading standard. *Id.* ("[Plaintiffs are] not required to plead these elements with particularity. Rather, the claim is subject to the more lenient Rule 8(a) notice pleading standard.") (citing *Ki-Poong Lee v. So*, No. N14C-08-173-PRW, 2016 WL 6806247, at *5 (Del. Super. Nov. 17, 2016) (explaining that

6

constructive fraud claims only require the plaintiff to plead "a short and plain statement of the claim" demonstrating its entitlement to relief)).

Here, as set forth above, Plaintiffs allege a series of transfers from and that "USA did not receive anything of value or consideration from Acquisition, Fiber Holdings, or Fiber in exchange for this transfer." (D.I. 1 ¶¶ 70–71). They allege that the Fiber Entities collectively held more than $90 million in assets as of December 31, 2020, and that USA's assets primarily consisted of its interests in those entities, which made up "the large majority" of USA's and FTS's combined assets. (*Id.* ¶¶ 51, 59). They further allege that, following the transfer and the Tennessee judgment, FTS and USA no longer possessed sufficient assets to satisfy the judgment, were no longer operational and lacked any employees, and lacked property or active bank accounts, and were not paying the judgment debt. (*Id.* ¶¶ 8–9, 60–63). Under DUFTA, a debtor that is "generally not paying [its] debts as they become due is presumed to be insolvent." *Cleveland-Cliffs*, 2023 WL 5688392, at *9 (quoting 6 *Del. C.* § 1302(b)).

Collectively, these allegations plausibly support (1) a transfer by USA of $90 million of equity, (2) for no consideration, and (3) leaving USA with unreasonably small or no assets relative to its substantial, known judgment debt, and generally not paying that debt. (D.I. 1 ¶¶ 48–52, 59–63, 69–75). Reasonably equivalent value and insolvency are fact-intensive and not typically resolved at the pleading stage. *Cleveland-Cliffs*, 2023 WL 5688392, at *9 n.111 (collecting cases noting "reasonably equivalent value" is a question of fact); *accord In re Charys Holding Co., Inc.*, 443 B.R. 628, 637 (D. Del. 2010) (explaining that "reasonably equivalent value" is not defined in the Bankruptcy Code and however, the Third Circuit has noted that "a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave," which is fact sensitive and analyzed under the totality of the circumstances).

Defendants argue that Plaintiffs have not properly plead USA's pre-transfer financial condition and that Plaintiffs improperly aggregate "USA and the Fiber Entities" when referencing asset values. (D.I. 21 at 13–14; D.I. 26 at 5). But the Complaint alleges that USA wholly owned the Fiber Entities and that its assets were "comprised" of those equity interests. (D.I. 1 ¶¶ 7, 49–51, 59). In context, it is reasonable to infer that the $90 million in assets resided in USA's ownership of those subsidiaries. Accordingly, Plaintiffs have plausibly alleged that USA transferred substantially all of its value-bearing assets for no consideration, rendering it unable to satisfy a known judgment.

Accordingly, I recommend denying the Motion on this ground.

### C. Whether Plaintiffs State a Claim for Actual Fraudulent Transfer

Defendants argue that Plaintiffs "fail to satisfy the requirements of Rule 9(b) because the Complaint does not allege, with particularity, that Judgment Defendants, and USA specifically, transferred any assets that could be used to pay the Judgment." (D.I. 21 at 14).

To state a claim for actual fraudulent transfer in which "the debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor," 6 *Del. C.* § 1304(a)(1), Plaintiffs must "meet the particularity standard of Rule 9(b) by pleading 'specific supporting facts describing the circumstances of the transfer,' such as the who, what, and when of the challenged transfer." *Cleveland-Cliffs*, 2023 WL 5688392, at *10 (quoting *Ki-Poong Lee*, 2016 WL 6806247, at *4.) "Intent, though, 'may be averred generally.'" *Id.* (quoting *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211, 1245 (Del. Ch. 2019)). Courts may infer intent from "badges of fraud," including: transfer to insiders, lack of reasonably equivalent value, timing relative to incurring debt, transfer of substantially all assets and resulting insolvency, and before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit. *Cleveland-Cliffs*,

2023 WL 5688392, at *11 (quoting *Paul Elton, LLC v. Rommel Delaware, LLC*, C.A. No. 2019-0750-KSJM, 2020 WL 2203708, at *10 (Del. Ch. May 7, 2020) (describing "badges of fraud" as "a phrase that generally refers to circumstances that would allow a court to find (or, at the pleading stage, infer) the intent required to support a claim of fraud")); *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 196 (Del. Ch. 2014) (citing 6 *Del. C.* § 1304(b)).

Here, Plaintiffs allege facts supporting several badges of fraud. First, they plausibly allege transfer to insiders because USA transferred its equity interests in the Fiber Entities to its parent, Acquisition, then to Acquisition's wholly owned subsidiary, Fiber Holdings, and then to Fiber, which is wholly owned by Fiber Holdings. All of these companies share the same CEO, CFO, Executive Chairman, and General Counsel, and are under the UniTek Global corporate umbrella. (D.I. 1 ¶¶ 6, 10, 64–66, 73, 80–81, 91). Second, Plaintiffs allege lack of reasonably equivalent value because Plaintiffs plead that USA, Acquisition, and Fiber Holdings received "no consideration or anything of value" for the transfers. (*Id.* ¶¶ 52–57, 70–72, 82). Third, Plaintiffs allege suspicious timing because the ORA was executed months after the Tennessee court granted Plaintiffs' fee petition and while the appeal of that award was ongoing. (*Id.* ¶¶ 42–49, 83). The transfer thus occurred "shortly before or shortly after a substantial debt was incurred," within the meaning of DUFTA. Fourth, Plaintiffs allege the transfer of substantially all assets and resulting insolvency because Plaintiffs plead that the Fiber Entities represented more than $90 million in assets and that USA's equity in those entities constituted the large majority of its assets. Further, Plaintiffs plead that after the transfer, USA and FTS allegedly lacked assets sufficient to satisfy the judgment, had no operations, property, or bank accounts, and were not paying the judgment. (*Id.* ¶¶ 51, 59–63, 72, 75, 84–85). Finally, Plaintiffs allege that Defendants had knowledge of pending and substantial claims by pleading that, by March 29, 2021, FTS and USA had been defendants in

the underlying FLSA litigation, an amended judgment and a multi-million-dollar fee award had issued, and the Sixth Circuit had set briefing on the appeal of that fee award. (*Id.* ¶¶ 4–5, 40–47, 69, 81–83). That is, Plaintiffs allege that USA knew of the judgment and anticipated that its exposure exceeded $3.1 million. *See WIA Holdings LLC v. Scottish American Capital LLC*, C.A. No. 2024-1226-PRW, 2026 WL 147457, at *16 (Del. Ch. Jan. 20, 2026) (denying a motion to dismiss where there were similar badges of fraud as here).

Defendants do not rebut these "badges of fraud" but instead argue that "Plaintiffs put the cart before the horse given that they have not established alter ego liability" and accordingly, "the alleged $90 million value of the Fiber Entities has no bearing on Plaintiffs' claims for alleged fraudulent or constructive fraudulent transfer because Plaintiffs have not established that the Fiber Entities could be held liable for the Judgment amount in the first place." (D.I. 26 at 5). Defendants do not cite any authority for this proposition, nor do they grapple with whether establishing liability at this stage is necessary in light of the gravamen of the action, which is that Defendants improperly and fraudulently transferred their assets rendering them unable to satisfy a judgment. Consistent with the Court of Chancery in *Cleveland-Cliffs*, I conclude that "I need not definitely resolve this question [of liability] today" because Plaintiffs have "generally pleaded facts showing [Defendants'] intent." *Cleveland-Cliffs*, 2023 WL 5688392, at *12; *In re Appleseeds Intermediate Holdings, LLC*, 470 B.R. 289, 300 (D. Del. 2012) (denying motion to dismiss where there were four badges of fraud pled).

Accordingly, I recommend denying the Motion on this ground.

### D. Whether Plaintiffs State a Claim for Successor Liability

Defendants seek to dismiss Plaintiffs' successor liability claim on two grounds. With respect to the first ground, Defendants argue in their Opening Brief that Plaintiffs "fail to plead

10

sufficient facts to support a reasonable inference of fraud, which is fatal to its successor liability claim as well." (D.I. 26 at 6). Because I do not recommend dismissing Plaintiffs' fraud claims, I do not recommend dismissing Plaintiffs' successor liability claims on this basis either.

With respect to the second ground, Defendants state in their Reply Brief (without further elaboration) that Plaintiffs "have not alleged that there was only one corporation at the completion of the subject transfer from USA to Fiber. This fact alone is fatal to Plaintiff's argument for successor liability based on continuation." (D.I. 26 at 7). This argument does not appear in Defendants' Opening Brief.[1] Accordingly, it has arguably been forfeited either for having not been raised in the Opening Brief or for being improperly underdeveloped. *See Doehler N. Am., Inc. v. Davis*, No. 22-501-RGA, 2023 WL 3569775, at *6 (D. Del. May 19, 2023) ("Defendants make additional arguments in their reply brief [in support of their motion to dismiss]. As Defendants failed to raise these arguments in their opening brief, I decline to consider them here. 'Arguments raised for the first time before a district court in a reply brief are deemed forfeited.'")(quoting *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023)); *United States v. Heatherly*, 985 F.3d 254, 270 (3d Cir. 2021) ("[Defendants] object to three forensic compilations of Zoom data. But they have forfeited these objections. [Defendant's] opening brief spends just one page discussing them and does not cite a single legal authority for why it was error to admit them. . . . By not developing these arguments properly, [Defendants] have forfeited them.").

---

[1] Plaintiffs plead in their Complaint that they seek a declaration that "Fiber is a mere continuation of and a successor to USA." (D.I. 1 at 11–12). Defendants do not address the "mere continuation" theory of successor liability in their Opening Brief. The entirety of Defendants' argument on successor liability in their Opening Brief is as follows: "Plaintiffs' remaining claim for successor liability fares no better. Plaintiffs fail to plead the elements of successor [*sic*] since their empty fraud allegations do not give rise to successor liability." (D.I. 21 at 15).

11

Even if not forfeited, Defendants' argument does not compel dismissal. Under Delaware law, "when one company sells or otherwise transfers all of its assets to another company, the buyer generally is not responsible for the seller's liabilities, including claims arising out of the seller's tortious conduct." *Cleveland-Cliffs*, 2023 WL 5688392, at *15 (quoting *Ross v. Desa Hldgs. Corp.*, No. 05C–05–013 MMJ, 2008 WL 4899226, at *4 (Del. Super. Sept. 30, 2008)). The "mere continuation" exception requires that "the purchaser of the assets to be a continuation of 'the same legal entity,' not just a continuation of the same business in which the self of the assets engaged." *Id.* at *16 (quoting *Spring Real. Est., LLC v. Echo/RT Holdings, LLC*, C.A. No. 7994-VCN, 2013 WL 6916277, at *5 (Del. Ch. Dec. 31, 2013)). "The 'primary elements' of being the same legal entity have been said to include 'the common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer.'" *Id.*

Although Delaware courts have generally construed this theory "very narrowly," *Cleveland-Cliffs*, 2023 WL 5688392, at *16, the Complaint alleges enough here to survive a motion to dismiss. *See, e.g., Spring Real.*, 2013 WL 6916277, at *5; *Fehl v. S.W.C. Corp.*, 433 F. Supp. 939, 946 (D. Del. 1977). Plaintiffs allege that, prior to the ORA, USA owned the equity interests in the Fiber Entities. (D.I. 1 ¶ 50). Plaintiffs allege that pursuant to ORA, USA transferred its equity interests in the Fiber Entities first to Acquisition, which were then transferred to Fiber Holdings, and finally transferred to Fiber. (*Id.* ¶¶ 5, 52, 54, 56). Pleading that "Fiber is a mere continuation of and a successor to USA," Plaintiffs allege that Acquisition's Chief Financial Officer and corporate representative testified that "all of the Fiber Entities were performing the same operations when they were owned by USA prior to the [ORA] as they are now performing under Fiber," that "Fiber continues to operate the Fiber Entities as a mere continuation of USA.

The Fiber Entities continue to operate the same business as they did prior to the transfer. All of the Defendants share the same CEO, CFO, and Executive Chairman, and General Counsel." (*Id.* ¶¶ 64, 91, 94). Plaintiffs also plead that the Judgment Defendants essentially no longer exist—they have no bank accounts, no employees, and no assets. (*Id.* ¶¶ 60–63). Taken together, these facts plausibly allege that Fiber is a mere continuation of USA. *See Cleveland-Cliffs*, 2023 WL 5688392, at *16 ("[I]t is reasonable to infer from the Complaint that Boomerang no longer exists as a going concern, has effectively been dissolved, and was replaced by PTC Liberty."). To hold otherwise would require me to infer the Complaint in Defendants' favor on what appears to be a disputed factual issue. *cf. Simple Glob., Inc. v. Brathwait Watches, Inc.*, No. N21C-01-086 FWW, 2022 WL 100363, at *3 (Del. Super. Ct. Jan. 10, 2022) (denying motion for summary judgment on successor liability claim: "[I]t appears that a relationship of some degree exists, or existed, between BAS and BI, BAS and BWI, and BI and BWI. The facts presented are insufficient in the Court's view to assess the degree of that relationship to determine if BWI is so dominated by BI that successor liability should be imposed.").

With respect to the "one company" test that Defendants ask me to apply for the first time via their Reply Brief (D.I. 26 at 6–7), Defendants cite no cases that tell me that I must grant a motion to dismiss under circumstances similar to what is alleged to have occurred here. For example, Defendants quote language from *Magnolia's at Bethany, LLC v. Artesian Consulting Eng'rs, Inc.*, No. S11C-04013ESB, 2011 WL 4826106, at *3 (Del. Super. Ct. Sept. 19, 2011). But there, the Delaware Superior Court dismissed a successor liability claim based on a mere continuation theory that involved unrelated business entities engaging in an arms-length transaction with cash consideration and no common identity of officers, directors, or shareholders. *Id.* As described above, Plaintiffs plead far different facts here. Moreover, unlike in *Spring*

13

(another case from which Defendants quote but do not provide any analysis of), Defendants do not argue here that the ORA contemplates that USA would continue to exist. Rather, they argue only that Plaintiffs' claim must fail because they "have not alleged that there was only one corporation at the completion of the subject transfer from USA to Fiber." (D.I. 26 at 6–7). In essence, Defendants chastise Plaintiffs for failing to plead a legal conclusion, all while ignoring the fact that Plaintiffs have pled facts plausibly establishing that, essentially, USA no longer exists because it has no employees, no assets, and no bank accounts.

Accordingly, I recommend denying the Motion on this ground.

### E. Whether Plaintiffs' Request for Punitive Damages Should Be Dismissed

Defendants argue that Plaintiffs' claim for punitive damages and attorneys' fees under DUFTA should be dismissed because such awards are precluded by statute. (D.I. 21 at 15). As Defendants point out, at least one court has concluded that punitive damages are not available under DUFTA. (*Id.*). Plaintiffs do not dispute this reading of DUFTA. With respect to attorneys' fees, however, Defendants do not cite any authority precluding, globally, the award of attorneys' fees. And in view of Delaware "Supreme Court [having] recognized the 'broad latitude' a court in equity has to craft a remedy appropriate to the circumstances of a fraudulent transfer," I am hesitant to prematurely block Plaintiffs' ability to recover fees under an appropriate theory. *Aug. v. Aug.*, No. 3180-VCS, 2009 WL 458778, at *10 (Del. Ch. Feb. 20, 2009) (quoting *Hogg v. Walker*, 622 A.2d 648, 652-54 (Del. 1993)).

Accordingly, I recommend granting Defendants' Motion as it relates to Plaintiffs' DUFTA claims that seek punitive damages.

## IV. CONCLUSION

For the reasons set forth above, I recommend denying Defendants' Motion except as it relates to dismissing Plaintiffs' claims for punitive damages under DUFTA, which I recommend granting. I also recommend denying as moot Defendants' Motion to Stay as the instant Report and Recommendation resolves Defendants' Motion.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: March 5, 2026

                                                   Laura D. Hatcher
                                                   United States Magistrate Judge